```
                 IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


UNITED STATES OF AMERICA,        Criminal Action
                                 No. 1:14CR241-1
     Plaintiff,

vs.                              Greensboro, North Carolina
                                 September 4, 2014
JUAN MORENO-TAPIA,

     Defendant.
_____/


          TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
          BEFORE THE HONORABLE CATHERINE C. EAGLES
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:     LISA BOGGS, ESQUIRE
                        Assistant United States Attorney
                        Post Office Box 1858
                        Greensboro, North Carolina 27402


For the Defendant:      JOHN A. DUBERSTEIN, ESQUIRE
                        Assistant Federal Public Defender
                        301 North Elm Street
                        Suite 410
                        Greensboro, North Carolina 27401


Court Reporter:         J. Calhoun, RPR
                        Room 101, U.S. Courthouse Building
                        324 West Market Street
                        Greensboro, North Carolina 27401
                        (336) 332-6033


          Proceedings reported by stenotype reporter.
     Transcript produced by computer-aided transcription.
```

**PROCEEDINGS**

(The defendant is present.)

MS. BOGGS: The next matter is that of United States versus Juan Antonio Moreno-Tapia, 1:14CR241-1. The defendant is here for change of plea. He's represented by John Duberstein. Dr. Bender is presented as the interpreter.

If Your Honor please, a plea agreement and factual basis have been filed with the Court.

THE COURT: All right. Good morning, Mr. Duberstein.

MR. DUBERSTEIN: Good morning, Judge.

THE COURT: Have you had enough time to consult -- the interpreter is present, and I take it she's needed?

MR. DUBERSTEIN: Mr. Moreno-Tapia speaks English fairly well. He's been here since he was young. Out of an abundance of caution, in all hearings so far, we have had an interpreter present, so I think it's probably the best.

THE INTERPRETER: Would you prefer that I just be here in case, or translate everything?

THE DEFENDANT: It doesn't matter. I can understand very well.

THE COURT: All right. We'll start out then in English but, Mr. Moreno-Tapia, if at any point you need the interpreter to interpret everything, or you have any problem understanding, please turn to her or ask your attorney or stop me.

1      How long have you been here?
2      THE DEFENDANT: Since I was ten years old.
3      THE COURT: All right. Mr. Duberstein, you have had
4 enough time to talk to your client and review discovery and
5 other information?
6      MR. DUBERSTEIN: Yes, Your Honor.
7      THE COURT: Are you ready to proceed with the change
8 of plea hearing?
9      MR. DUBERSTEIN: We are.
10     THE COURT: Do you believe that Mr. Moreno-Tapia
11 understands the charges and the nature of this hearing?
12     THE DEFENDANT: Yes.
13     THE COURT: Does he want to enter a plea of guilty
14 pursuant to a written plea agreement to Count Two, illegal
15 re-entry of an aggravated felon?
16     MR. DUBERSTEIN: Yes.
17     THE COURT: Has anyone made any threats or promises
18 to induce the plea of guilty, other than the promises in the
19 plea agreement?
20     MR. DUBERSTEIN: No, Your Honor.
21     THE COURT: Is it your recommendation, that the Court
22 accept the guilty plea?
23     MR. DUBERSTEIN: Yes.
24     THE COURT: All right. Mr. Moreno-Tapia, the
25 courtroom deputy will swear or affirm you to give truthful

answers to me.

  (The defendant was sworn.)

  THE COURT: Mr. Moreno-Tapia, you are now under oath, and false answers subject you to prosecution for perjury or making a false statement.

  Do you understand?

  THE DEFENDANT: Yes.

  THE COURT: Am I speaking clearly enough for you?

  THE DEFENDANT: Oh, yes.

  THE COURT: Are you having any problems understanding me?

  THE DEFENDANT: No.

  THE COURT: Tell me your full name.

  THE DEFENDANT: Juan Antonio Moreno-Tapia.

  THE COURT: How old are you?

  THE DEFENDANT: I'm 29-years old.

  THE COURT: How far did you go in school?

  THE DEFENDANT: Ninth grade, high school.

  THE COURT: How many years of school did you have here in the United States?

  THE DEFENDANT: I started at the fifth grade and finished ninth grade, so that would be four, five years.

  THE COURT: Do you take any prescription medicine?

  THE DEFENDANT: No.

  THE COURT: Have you recently been treated for any

5

```
 1  mental illness or addiction?
 2              THE DEFENDANT:  No.
 3              THE COURT:  When was the last time you had any
 4  alcohol, drugs or medicine?
 5              THE DEFENDANT:  A year ago.
 6              THE COURT:  If at any time I talk too fast or say
 7  something you don't understand, please stop me and you can
 8  consult with the interpreter or we can shift and have her begin
 9  interpreting for you.  Okay?
10              THE DEFENDANT:  Okay.
11              THE COURT:  Have you received a copy of the
12  indictment?
13              THE DEFENDANT:  Yes.
14              THE COURT:  Were you able to read it in English?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Do you understand the indictment and the
17  charges you are facing?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Have you had enough time to talk to your
20  attorney about your case?
21              THE DEFENDANT:  Yes, I did.
22              THE COURT:  Have you fully discussed the charges with
23  him and talked to him about your situation, the evidence
24  against you and any defenses you might have?
25              THE DEFENDANT:  Yes, Your Honor.
```

1     THE COURT:  Have you discussed the penalties for
2 these crimes and the consequences of a guilty plea to Count
3 Two, illegal re-entry?
4     THE DEFENDANT:  Yes, Ma'am.
5     THE COURT:  Are you satisfied with his
6 representation?
7     THE DEFENDANT:  I am, yes.
8     THE COURT:  We're here because you signed a written
9 plea agreement indicating you want to change your plea from not
10 guilty to guilty as to Count Two, illegal re-entry of an
11 aggravated felon.  Before you can do that, I need to ask you a
12 number of questions to be sure that you understand about your
13 right to a trial, the possible penalties for this crime, the
14 elements of the offense and how a sentencing process works.
15 We'll also go over the plea agreement.
16     After we do all of those things, I'll ask you how you
17 plead to the charge and you'll let me know; guilty or not
18 guilty.  Any questions?
19     THE DEFENDANT:  No.
20     THE COURT:  A person charged with a crime in the
21 United States, has a number of rights.  You have these rights,
22 even if you are in the country without documents or permission.
23 You do not have to plead guilty.  You can plead not guilty and
24 have a jury determine whether you are guilty or not guilty.
25     At trial, you are presumed innocent, and the

1  government must prove your guilt beyond a reasonable doubt by
2  proving each and every element of the crime charged beyond a
3  reasonable doubt.
4         Do you understand those rights?
5         THE DEFENDANT:  Yes.
6         THE COURT:  If the government does not prove each and
7  every element beyond a reasonable doubt, then the jury has to
8  find you not guilty.
9         Do you understand that?
10        THE DEFENDANT:  Yes.
11        THE COURT:  You have the right to the assistance of
12 counsel at all stages of the proceeding, including a trial, and
13 if you plead not guilty, Mr. Duberstein will continue to
14 represent you at no cost to you.
15        You have the right to be present for the trial and to
16 see and hear the testimony of all the witnesses.  You have the
17 right to confront the witnesses, and your lawyer can ask them
18 questions on cross-examination.  You have the right to compel
19 the attendance of witnesses to testify in your defense at no
20 cost to you.
21        Do you understand those rights?
22        THE DEFENDANT:  Yes.
23        THE COURT:  You have the right to testify at trial if
24 you want to, but no one can force you to testify.  You have the
25 absolute privilege to remain silent.  You have the right to

present evidence but, again, you do not have to do so. If you choose not to present evidence or not to testify, the Court will tell the jury not to consider this or hold it against you in determining your guilt.

Do you understand these rights?

THE DEFENDANT: Yes, Ma'am.

THE COURT: Do you have any questions about any of these rights I've just summarized?

THE DEFENDANT: Not at all.

THE COURT: If you plead guilty, you give up these and other important rights.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Now, I understand you have a written plea agreement. Have you read that written plea agreement?

THE DEFENDANT: Yes, I did.

THE COURT: All right. And you were able to read it in English without any trouble?

THE DEFENDANT: Yeah. I read it in English without trouble.

THE COURT: Do you understand the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Have you had enough time to talk to your attorney about it?

THE DEFENDANT: Yes.

1          THE COURT:  Mr. Duberstein is showing you a copy, I
2   believe.  Page seven appears to have your signature.  Is that
3   in fact your signature?
4          THE DEFENDANT:  Yes, Ma'am.
5          THE COURT:  All right.  Would counsel summarize the
6   plea agreement.
7          MR. DUBERSTEIN:  Yes, Your Honor.  In exchange for
8   Mr. Moreno-Tapia's plea of guilty to Count Two of the
9   indictment, the government has agreed, per the written plea, to
10  dismiss the remaining count, Count One, and also, to recommend
11  a third-level of acceptance of responsibility if
12  Mr. Moreno-Tapia qualifies.  That's the full extent of the
13  actual plea bargaining.
14         The plea agreement also includes the standard
15  provisions alerting him to the potential immigration
16  consequences of his plea and to the hundred dollar special
17  assessment, and the various provisions of the statute including
18  the 20, 10 and 2-year maximums that depend ultimately, on
19  Mr. Moreno-Tapia's criminal history, the nature of his prior
20  criminal charges.
21         THE COURT:  All right.  Mr. Moreno-Tapia, is that an
22  accurate summary of your agreement with the government?
23         THE DEFENDANT:  Yes.
24         THE COURT:  Has anyone made any promises to you that
25  Mr. Duberstein did not mention?

1      THE DEFENDANT:  No.
2      THE COURT:  Does the written plea agreement contain
3 all the terms and conditions of your arrangements with the
4 government?
5      THE DEFENDANT:  Yes.
6      THE COURT:  Do you have any questions about it?
7      THE DEFENDANT:  No, I don't.
8      THE COURT:  The government has agreed to make certain
9 recommendations to the Court as part of your plea agreement.
10 Those are recommendations only, and are not binding on the
11 Court, so the Court does not have to follow those
12 recommendations.  If the Court chooses not to follow the
13 recommendations, your sentence may be longer than you expect,
14 and that is not a reason to withdraw your guilty plea.  Of
15 course it will not ever be longer than the statutory maximum.
16      Do you have any questions about that?
17      THE DEFENDANT:  No.
18      THE COURT:  Has anyone made you any threats or
19 otherwise attempted to force you to plead guilty against your
20 wishes?
21      THE DEFENDANT:  No, Your Honor.
22      THE COURT:  You have been charged with and your plea
23 agreement calls for you to plead guilty to Count Two, illegal
24 re-entry into the United States.  The elements of this are,
25 that you are an alien, that you were previously deported or

1  removed from the United States on or about March 17, 2009, that
2  thereafter you voluntarily re-entered the United States and
3  were found in Forsyth County on or about August 22nd, 2013, and
4  that you had not received consent of the Attorney General or
5  Secretary of Homeland Security to apply for admission to this
6  country.
7          Do you have questions about those elements?
8          THE DEFENDANT:  No.
9          THE COURT:  If you plead not guilty, the government
10 has to prove those things beyond a reasonable doubt.  If you
11 plead guilty, you are admitting each and every one of those
12 things.
13         Do you understand that?
14         THE DEFENDANT:  Yes.
15         THE COURT:  This crime ordinarily carries a possible
16 maximum punishment of two years.  If, however, you were
17 deported after conviction of a nonaggravated felony, or after
18 three or more misdemeanors involving drugs, crimes against a
19 person or both, then the maximum punishment is ten years.  If
20 you were deported after conviction of an aggravated felony,
21 then the maximum punishment is 20 years.
22         Do you have questions about those possible penalties?
23         THE DEFENDANT:  No.
24         THE COURT:  In addition, a fine of up to $250,000 can
25 be imposed and a special assessment of $100,000 is authorized.

1           Do you have questions about that?
2           THE DEFENDANT:  No.
3           THE COURT:  After a term of imprisonment, the law
4  authorizes the Court to impose a term of supervised release in
5  your case.  That supervised release period can be as long as
6  one year, unless you have a prior record of a felony or three
7  or more misdemeanors involving drugs, crimes against a person
8  or both, in which case supervised release can be as long as
9  three years.
10          Do you have questions about that?
11          THE DEFENDANT:  No.
12          THE COURT:  If the Court does place you on supervised
13 release, then that means the Court will require compliance with
14 certain terms and conditions, for example, not returning to the
15 country if you were deported.  If you violate those conditions,
16 the Court can revoke your supervised release and can send you
17 back to prison.  That additional prison term can be
18 substantial, and it can be followed by more time on supervised
19 release.
20          Do you have questions about that?
21          THE DEFENDANT:  No.
22          THE COURT:  There are other consequences to a guilty
23 plea.  You will have a felony conviction and you will lose the
24 right to vote, the right to hold public office, the right to
25 serve on a jury, and the right to possess a firearm, if you

1 have those rights.
2   Do you understand those consequences?
3   THE DEFENDANT: Yes Ma'am.
4   THE COURT: If you are not a citizen, your guilty
5 plea will affect your immigration status. You will almost
6 certainly be deported, denied citizenship and denied admission
7 back into the United States in the future.
8   Do you have questions about that?
9   THE DEFENDANT: No.
10   THE COURT: If you plead guilty and your plea of
11 guilty is accepted, your sentencing hearing will be in several
12 weeks, likely in November. In the meantime, the probation
13 office will prepare a presentence report. That report contains
14 a lot of information about the crime and about you. It will
15 also contain a proposed sentencing guideline calculations
16 figure, taking into account things like the nature of the
17 crime, the actual harm from the crime, any other relevant
18 conduct and your prior criminal history.
19   You and your attorney, as well as the government,
20 will have an opportunity to review the report. You will be
21 able to object to any mistakes or to the way the guidelines
22 were calculated, and if you think they were done wrong, at your
23 sentencing hearing the Court will resolve any factual dispute
24 and make the final decision about your guideline range. Once
25 it is determined, the Court does consider the guideline ranges,

but it is advisory only, so the Court can sentence you to a shorter or a longer sentence, if that seems appropriate in the circumstances of your case. Of course it can't be longer than the statutory maximum.

The Court will decide what your sentence is, only after considering the guidelines, the presentence report and the evidence, and after listening to the government's attorney and your attorney and to you, if you want to speak.

Do you understand that process?

THE DEFENDANT: Yes, Ma'am.

THE COURT: You can see, no one today knows what your guideline range is or what your sentence will be. Other than the statutory maximum, nobody can give you any promises. Your attorney may have suggested some other numbers to you as possibilities, but those are estimates only, and are not binding on the Court. If your guideline range and your sentence is different from any estimate your attorney has given you, that is not a basis to withdraw your guilty plea.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions?

THE DEFENDANT: No.

THE COURT: Has anyone made you any promises or guarantees about your sentence, other than to tell you about the statutory maximum?

```
 1                THE DEFENDANT:  No.
 2                THE COURT:  You and the government do have certain
 3   rights to appeal any sentence that I impose.  Do you understand
 4   that?
 5                THE DEFENDANT:  Yes.
 6                THE COURT:  If you plead guilty, you are admitting
 7   the elements of the offense, and you are giving up your
 8   Constitutional right to a jury trial, and you are accepting the
 9   terms of the written plea agreement.
10                Do you understand?
11                THE DEFENDANT:  Yes, Ma'am.
12                THE COURT:  Do you have any questions about anything
13   we've talked about here today?
14                THE DEFENDANT:  No.
15                THE COURT:  Can you just summarize for me why we're
16   here?
17                THE DEFENDANT:  Well, we're here because I re-entered
18   illegal to this country.
19                THE COURT:  And you understand you have the choice to
20   plead guilty or not guilty?
21                THE WITNESS:  Yes, I do.
22                THE COURT:  How do you plead to Count Two, illegal
23   re-entry of an aggravated felon?
24                THE DEFENDANT:  Guilty.
25                THE COURT:  And are you pleading guilty because you
```

16

```
 1  are in fact guilty?
 2           THE DEFENDANT:  I am.
 3           THE COURT:  It is the finding of the Court then, that
 4  the defendant is competent and capable of entering an informed
 5  plea.  He is aware of the nature of the charges and the
 6  consequences of a guilty plea, and his plea of guilty is a
 7  knowing and voluntary plea.
 8           I believe there was a written factual basis proffered
 9  by the government.  Have you seen that, Mr. Duberstein?
10           MR. DUBERSTEIN:  Yes, Your Honor.
11           THE COURT:  Have you read it and gone over it with
12  the defendant?
13           MR. DUBERSTEIN:  We have.
14           THE COURT:  Any objections to it?
15           MR. DUBERSTEIN:  No objections, Your Honor.
16           THE COURT:  Do you agree that it is sufficient to
17  provide an independent factual basis for his guilty plea?
18           THE DEFENDANT:  Yes.
19           THE COURT:  Ms. Boggs, anything to add to?
20           MS. BOGGS:  No, Your Honor.
21           THE COURT:  The Court finds then that the defendant's
22  plea of guilty is supported by an independent basis in fact,
23  containing each of the essential elements to Count Two.  The
24  defendant's plea of guilty is accepted, and the defendant is
25  adjudged guilty of illegal re-entry of a removed alien.
```

```
 1            The Court directs the probation office to prepare a
 2   presentence report.  They'll want you to be present for that,
 3   and your attorney can join you, Mr. Moreno-Tapia.
 4            I'll set sentencing for Friday, November 21st, at
 5   9:30 in the morning.
 6            Are there questions or anything I have forgotten to
 7   do?
 8            MS. BOGGS:  No, Your Honor.
 9            MR. DUBERSTEIN:  Not that I know of, Your Honor.
10            THE COURT:  Mr. Moreno-Tapia?
11            THE DEFENDANT:  I don't have any questions.
12            THE COURT:  I'll see you in November.
13            (This matter was concluded.)
```

```
 1                    C E R T I F I C A T E
 2
 3        I, J. CALHOUN, RPR, United States District Court
 4   Reporter for the Middle District of North Carolina, DO HEREBY
 5   CERTIFY
 6
 7        That the foregoing is a true and correct transcript of
 8   the proceedings had in the within-entitled action; that  I
 9   reported the same to typewriting through the use of
10   Computer-Aided Transcription.
11        THIS TRANSCRIPT CERTIFICATION IS VOID, IF THE
12   SIGNATURE IS NOT ORIGINALLY SIGNED BY THE COURT
13   REPORTER WHO REPORTED THIS MATTER.
14
15
16
17
18
19   Date:   10-30-15        J. Calhoun, RPR
                             United States Court Reporter
20                           324 W. Market Street
                             Greensboro, NC  27401
21
22
23
24
25
```